COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-126-CR

 

 

MARTIN ALLYN DERUSHA, JR.                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 43RD
DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Martin Allyn Derusha Jr. appeals his
conviction for felony driving while intoxicated (ADWI@).  We affirm.








Appellant was arrested for DWI and submitted to a
blood test.  The State=s
indictment alleged, inter alia, that he had been Aintoxicated
by not having the normal use of his mental and physical faculties by reason of
the introduction of alcohol . . . and by having an alcohol concentration of at
least 0.08.@[2]

At appellant=s trial,
officers testified that their observations of and interactions with him on the
night of his arrest led them to believe that he had lost the normal use of his
physical and mental faculties by drinking alcohol, and therefore, had been
intoxicated.  Laboratory test results
showing that appellant=s blood alcohol concentration
was over the legal limit were also admitted. 
After hearing this and other evidenceCincluding
evidence of appellant=s prior DWI convictionsCthe jury
found appellant guilty and assessed his punishment at three years=
confinement.  The trial court sentenced
him accordingly.








In his sole point on appeal, appellant claims
that the evidence is legally insufficient to show that he was intoxicated
because his Aattack on the blood test
undermined the State=s case.@  In support of this claim, he argues that the
blood test results showing that his alcohol concentration was two or more times
over the legal limit were not reliable or accurate, that the collection of his
blood sample was flawed, that the blood testing equipment had not been recently
tested or maintained, and that the testing laboratory had not followed
established protocol.

The State, however, did not merely allege
intoxication by blood alcohol concentration exceeding the legal limit; it also
alleged intoxication by loss of mental and physical faculties.  Appellant does not challenge the proof
supporting these elements of the State=s case,
including testimony from experienced law enforcement officers that he was
intoxicated by having lost the normal use of his mental and physical facultiesCevidence
that has repeatedly been held sufficient to support a conviction for driving
while intoxicated.[3]








The evidence in this case showed that on the
night charged in the indictment, Texas Department of Public Safety (ADPS@)
Trooper Chris Burns was in a marked patrol car facing westbound on the side of
Interstate 20, monitoring nighttime traffic coming out of Fort Worth.  Around 10:40 p.m., he noticed a Toyota Spyder
convertible approaching quickly from behind, moving from lane to lane, and
passing other cars in an erratic manner. 
He clocked the car at 83 miles an hour. 
The posted speed limit on the interstate was 65 miles per hour.  Trooper Burns followed and activated his
emergency lights, stopping the car after a couple of miles.

The weather was clear and coolCthe
temperature was around 40 degrees. 
Appellant had been driving with the top down.  Trooper Burns noticed that the car=s brake
lights had remained on after the stop, and he suspected that it was still in Adrive@ as he
approached.  Upon reaching the car, he
smelled the odor of an alcoholic beverage. 
He asked appellant to exit.  Using
the steering wheel and side of the car for balance, appellant pulled himself
out.

Trooper Burns asked appellant to move over to the
bar ditch, but appellant remained beside his car.  Trooper Burns asked again before appellant
complied.  There was a Astrong@ odor of
alcohol on appellant=s Aperson,
about him, [and] on him.@

Appellant held a piece of paper and his wallet in
his hand.  When asked for his license and
proof of insurance, he reached into his back pocket as if he had forgotten
where his wallet was.  He handed the
trooper his license and dropped his wallet. 
He tried to give Trooper Burns some credit cards and unsteadily bent
down to retrieve his wallet.








After appellant had produced his license, he kept
shoving his hands into his pockets despite the trooper=s
repeated instructions that he keep his hands visible for officer safety.  Trooper Burns had to repeat several of his
instructions to appellant during the stop, such as where to move, where to
stand, and to keep his distance because he constantly invaded the trooper=s Apersonal
space.@

Appellant=s eyes
were red and glassy, his face was flushed, his speech was slurred or Athick
tongue[d],@ his balance was unsteady, and
he could not walk in a straight line. 
Trooper Burns performed the horizontal gaze nystagmus test (AHGN@) and
noticed that all six clues of intoxication were present.  He had learned in his training that the
presence of four clues indicated an 88% probability that the person tested was
intoxicated above the  legal limit of
0.08.

The trooper attempted to position appellant to
perform  the walk and turn test.  But appellant was unable to attempt the test
because he could not hold his balance long enough to get into the starting
position, which required that he stand with his right heel touching his left
toe and keep his hands down to his sides. 
Trooper Burns gave appellant multiple opportunities to commence the
test, but appellant could not assume the starting position.








Appellant lost his balance several times, Aand the
last time he lost his balance it was towards traffic.@  At that point, Trooper Burns moved appellant
off the roadway and handcuffed him, arresting him for DWI.  Trooper Burns testified that he arrested
appellant because in his opinion, appellant did not have the normal use of
either his physical or mental faculties due to his Adrinking
alcohol.@

After handcuffing appellant, Trooper Burns
started to search appellant=s
pockets, and appellant Ajerked away from@
him.  He stated that he was a surgeon and
that the trooper was not going to do that to him, and then he started swinging
his elbows, making contact with the trooper. 
At that point, Trooper Burns took appellant to the ground to subdue
him.  Appellant asked, ADo you
want to get shitty with me?@ 

Willow Park Police Officer Doug Garnett was on routine
patrol in the area when he noticed Trooper Burns and appellant Agoing to
the ground and the trooper=s hat
falling off his head.@ 
He radioed that the trooper was in a fight and pulled up to assist.  Other officers soon arrived, and appellant
was placed in the cage in Officer Garnett=s patrol
car and taken to jail.  On the way,
Officer Garnett smelled Aa pretty moderate odor of
alcoholic beverage coming from [appellant].@  The officer noticed that appellant=s speech
was Aa little
bit slurred,A and appellant told him that
since he was a Agoddamn doctor . . . he was
going to have [the officer=s]
badge.  And [the officer] had no idea who
[he] was messing with.@








At the sally port to the jail, appellant=s
belligerence necessitated officers=
restraining him in a Aconfinement chair,@ in
which they wheeled him from the patrol car into the jail.  Trooper Burns arrived shortly thereafter and
took appellant into the Intoxilyzer room. 
Appellant refused to provide a breath sample but wanted to provide a
blood sample instead.  Trooper Burns
called DPS Sergeant Cody Mitcham to assist in transporting appellant to the
local hospital to obtain a blood sample.

Sergeant Mitcham testified that in his opinion,
appellant Adefinitely was intoxicated that
night.@  His eyes were bloodshot, his voice was
slurred, and he staggered like an intoxicated person when he walked.  Sergeant Mitcham further testified that
appellant rambled like an intoxicated person and Avolunteered
information that wasn=t asked like an intoxicated
person.@

At the hospital, appellant offered to draw his
own blood.  Trooper Burns watched as a
phlebotomist drew a sample of appellant=s blood,
and he assisted her in sealing the vial and later sent the sample to the DPS
lab in Abilene for analysis.

Appellant was returned to the Parker County Jail,
and on the way, he said that if he had known that he was going to get arrested,
Ahe would
have ran and gave everybody some fun.@








We hold that the evidence is legally sufficient
to show that appellant was intoxicated by having lost the normal use of his
mental and physical faculties. 
Accordingly, we overrule appellant=s sole
point and affirm the trial court=s
judgment.

 

PER CURIAM

PANEL:  CAYCE, C.J.; WALKER and
MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 20, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 49.01(2)(A) & (B)
(Vernon 2003).





[3]See, e.g., Annis v. State, 578 S.W.2d 406, 407
(Tex. Crim. App. 1979) (holding that experienced trooper=s opinion that a
defendant was intoxicated at the time of driving based upon the defendant=s slurred speech,
swaying, unsteadiness and strong odor of intoxicating beverage is sufficient,
standing alone, to establish intoxication in a DWI prosecution); Martin v.
State, 724 S.W.2d 135, 137 (Tex. App.CFort Worth 1987, no pet.).